UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:22-cv-09287-AB-PD | Date: | June 28, 2023 |
|---|---|---|---|

Title: *Mahin K. Hakak v. Susan B. Geffen, et al.*

Present: The Honorable **ANDRÉ BIROTTE JR., United States District Judge**

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| Zachary Z. Zermay | Jeffrey A. Coleman, Howard Peter Brody |

**Proceedings: [In Chambers] ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE**

Before the Court is Defendants Susan B. Geffen, Susan G. Igdaloff, and Nancy E. Igdaloff's Motion to Dismiss (Dkt. No. 28) and Motion to Strike under California's anti-SLAPP Statute (Dkt. No. 26). The Motions were fully briefed. *See* Dkt. Nos. 33, 34, 35, 36. The Court heard oral argument on May 12, 2023, and took the matter under submission. Dkt. No. 39. For the foregoing reasons, both the Motion to Dismiss and the Motion to Strike are **GRANTED in part and DENIED in part.**

/ / /
/ / /
/ / /
/ / /
/ / /

# I. BACKGROUND

## A. Factual Background[1]

In May 2021, Harold Igdaloff hired Plaintiff Mahin Hakak ("Hakak") as his personal assistant and caretaker. FAC ¶ 11. Hakak's duties required her to reside with Mr. Igdaloff and, as a devoted caretaker, she developed a strong bond with him. *Id.*

Mr. Igdaloff's daughters, Defendants Susan and Nancy Igdaloff (the "Igdaloff Defendants"), resented the close relationship Hakak enjoyed with their father. *Id.* Worried Mr. Igdaloff would leave Hakak part of their inheritance, the Igdaloff Defendants accused Hakak of elder abuse. *Id*. at ¶ 12. The Igdaloff Defendants filed an elder abuse claim in Los Angeles Superior Court (the "Elder Abuse Case") and hired Defendant Susan Geffen ("Geffen") as their attorney. *Id.* In the Elder Abuse Case, Defendants sought and obtained a temporary restraining order against Hakak. *Id.* at ¶¶ 12, 51. While prosecuting the Elder Abuse Case, the Igdaloff Defendants engaged in a "campaign of fraudulent conduct," including but not limited to providing false information to the court and witness tampering. *Id.* at ¶ 16. The Igdaloff Defendants eventually withdrew their claims and voluntarily dismissed the case. *Id*. at ¶ 16(j).

The Igdaloff Defendants also told Wells Fargo, the bank that handled Mr. Igdaloff's account, that any checks Mr. Igdaloff issued to Hakak were forged. *Id*. at ¶ 13. Thus, Wells Fargo rejected the checks based on the alleged fraud. *Id.*

Accordingly, Hakak commenced the instant action.

## B. Procedural History

Hakak commenced the present action on December 22, 2022. Dkt. 1 ("Complaint"). On February 16, 2023, Defendants filed Motions to Dismiss and Strike the Complaint. *See* Dkt. Nos. 16, 19. Before the hearing on Defendants' Motions to Dismiss and Strike the Complaint, Hakak filed her First Amended Complaint. Dkt. No. 23 ("FAC"). In her First Amended Complaint, Hakak asserts

---

[1] The following facts, which the Court assumes are true and construes any inferences arising from those facts in the light most favorable to Plaintiff, are derived from Plaintiff's First Amended Complaint ("FAC"). Dkt. No. 23 ("FAC"); *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016) ("We must accept all well-pleaded material facts as true and draw all reasonable inferences in favor of the plaintiff.").

the following eight causes of action: (1) Violation of the Racketeer Influenced Corrupt Organizations Act ("RICO"); (2) Conspiracy in Violation of RICO; (3) Violation of the Computer Fraud & Abuse Act ("CFAA"); (4) Abuse of Process; (5) Malicious Prosecution; (6) Intentional Interference with Contractual Relations; (7) Intentional and or Negligent Interference with Prospective Economic Advantage; and (8) Unfair Competition. *See id.* at pp. 1-2.

On March 16, 2023, Defendants filed their present Motion to Dismiss the First Amended Complaint and Motion to Strike the Fourth Through Eighth Causes of Action in the First Amended Complaint. Dkt. Nos. 26 ("Motion to Strike" or "MTS"), 28 ("Motion to Dismiss" or "MTD"). On April 14, 2023, Hakak filed her oppositions to both motions. Dkt. Nos. 33 ("Opposition MTD" or "Opp'n MTD"), 34 ("Opposition MTS" or "Opp'n MTS"). On April 21, 2023, Defendants filed their replies. Dkt. Nos. 35 ("Reply MTS"), 36 ("Reply MTD").

## II. LEGAL STANDARDS

### A. Motion to Dismiss

#### 1. Motion to Dismiss for Failure to State a Claim

Federal Rule of Civil Procedure 8 requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Under Rule 12(b)(6), a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To defeat a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[L]abels[,] conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555.

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But a court is "not bound to accept as true a legal conclusion

couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1996).

If a court grants a motion to dismiss a complaint, it may do so with or without leave to amend. Leave to amend a complaint should be freely granted. Fed. R. Civ. P. 15(a). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

**2. Motion to dismiss for Lack of Subject Matter Jurisdiction**

Under Rule 12(b)(1), a party may bring a motion to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Rule 12(b)(1) jurisdictional attacks are either facial or factual." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A facial attack contends that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). To resolve a facial challenge, a court assumes that the allegations in the complaint are true and draws all reasonable inferences in favor of the party opposing dismissal. *Id.* By contrast, a factual attack disputes the truth of the allegations. *Id.*

**B. Motion to Strike**

"Anti-SLAPP statutes are designed to allow the early dismissal of meritless lawsuits aimed at chilling expression through costly, time-consuming litigation." *Gardner v. Martino*, 563 F.3d 981, 986 (9th Cir. 2009). California's anti-SLAPP statute authorizes a special motion to strike claims "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue[.]" Cal. Civ. Proc. Code § 425.16. "Federal courts give full effect to the anti-SLAPP statute." *Dean v. Kaiser Found. Health Plan, Inc.*, 562 F. Supp. 3d 928, 933 (C.D. Cal. 2022) (citing *United States ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 193 F.3d 963, 973 (9th Cir. 1999).

Courts employ a two-step burden-shifting analysis to resolve anti-SLAPP motions brought under California Code of Civil Procedure section 425.16. First, the court determines whether the moving party has shown that "the challenged claim arises from activity protected by section 425.16." *Optional Cap., Inc. v. Akin Gump Strauss, Hauer & Feld LLP*, 18 Cal. App. 5th 95, 110 (Cal. Ct. App. 2017). If the claim does arise from protected activity, the burden shifts to the non-moving party,

who must demonstrate a probability of prevailing on the claim. *Id.* "This second step has been described as a summary-judgment-like procedure." *Id.* (internal quotation marks omitted). However, if the anti-SLAPP motion challenges the legal sufficiency of a claim, then a plaintiff is not required to present prima facie evidence supporting his claim; instead, the court determines whether the plaintiff has met his burden under the Rule 12(b)(6) standard. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F. 3d 828, 833-34 (9th Cir. 2018).

## III. DISCUSSION

### A. Motion to Dismiss

Defendants move to dismiss Hakak's RICO claims (Counts 1, 2) and CFAA claim (Count 3) under Rule 12(b)(6) based on the *Noerr-Pennington* defense and Hakak's failure to plead the necessary elements. MTD at 5-8. Assuming the Court grants Defendants' motion to dismiss, Defendants additionally ask the Court to dismiss the First Amended Complaint in its entirety under Rule 12(b)(1) because only state claims would remain, and the parties are non-diverse. MTD at 8-9.

#### 1. RICO Claims (Counts 1 and 2)

Section 1964(c) of the RICO statute creates a private right of action for any "person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964. "Because [c]ivil RICO is an unusually potent weapon[,] courts should strive to flush out frivolous RICO allegations at an early stage in the litigation." *Tuscano v. Tuscano*, 403 F. Supp. 2d 214, 226 (E.D.N.Y. 2005).

To establish a RICO claim, a plaintiff must at least allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (internal quotation marks omitted). Section 1961 enumerates the type of conduct that may serve as a predicate act. 18 U.S.C. § 1961(1).

Defendants argue that Hakak's first and second causes of action are barred under the *Noerr-Pennington* doctrine. MTD 5-7. Hakak argues that *Noerr-Pennington* immunity does not apply because Defendants' challenged conduct falls within the sham litigation exception to the doctrine. Opp'n MTD at 5-8.

Originally developed in the antitrust context, the *Noerr-Pennington* doctrine is

derived from the First Amendment's Petition Clause. *Sosa v. DIRECTV, Inc.* 437 F.3d 923, 929 (9th Cir. 2006). "Under the *Noerr-Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Id.*[2] To "preserve the breathing space required for the effective exercise of the rights [the Petition Clause] protects, conduct incidental to the prosecution of the suit" is also immunized under *Noerr-Pennington*. *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 646 (9th Cir. 2009) (internal quotation marks and citation omitted; bracketed text in original). In the litigation context, courts have interpreted the "breathing space" principal as protecting conduct incidental to the prosecution of the suit. *Sosa*, 437 F.3d at 934-35.

Although vast, *Noerr-Pennington*'s reach is not unlimited. There is no immunity for conduct that, although "'ostensibly directed toward influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor.'" *Id.* at 938 (quoting *Eastern R. R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144 (1961)).[3]

Courts employ a three-step process in determining whether *Noerr-Pennington* immunity is applicable in the litigation context. First, courts determine whether the non-moving party's lawsuit burdens the moving party's petitioning activities. *Id.* at 932. If so, the court then determines whether the burden identified may be imposed consistently with the Constitution. *Id.* "If there is a substantial question that it may not, [the court] must determine whether … a reasonable construction of [the statute] exists that avoids the burden[.]" *Id.*

### a. Violation of 18 U.S.C. § 1962(c) (First Cause of Action)

#### 1. *Noerr-Pennington* Does Not Bar Hakak's First Cause of Action

Hakak's lawsuit seeks to impose RICO liability on Defendants for their conduct during the Elder Abuse Case and their alleged scheme to rob Hakak by canceling

[2] "The right of access to the courts" is but one aspect of the right to petition. *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972).

[3] Because the *Noerr-Pennington* developed in the antitrust context, many opinions defining the doctrine refer to anticompetitive conduct. However, the doctrine applies outside of the antitrust field. *See, e.g., Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731 (1983) (applying *Noerr-Pennington* in the labor relations context).

checks Mr. Igdaloff issued to her. FAC ¶¶ 24-36. Specifically, in her first cause of action, Hakak alleges Defendants committed the following predicate acts: (1) bank fraud in violation of 18 U.S.C. section 1344; (2) identity fraud in violation of 18 U.S.C. section 1028; (3) fraud in connection with access devices in violation of 18 U.S.C. section 1029; (4) witness tampering and intimidation in violation of 18 U.S.C. section 1512; and (5) fraud in connection with computer use in violation of 18 U.S.C. section 1030. *Id.* at ¶ 31.

***a) Hakak's lawsuit burdens Defendants' petitioning activities***

The Court begins the *Noerr-Pennington* analysis by determining whether Hakak's lawsuit burdens Defendants' petitioning activities. Hakak alleges misconduct in events that occurred during the Elder Abuse Case, which undisputedly represents a petition to the government. Defendants' conduct during the Elder Abuse Case, such has their interactions with witnesses, are part and parcel of prosecuting the action, and a challenge to this conduct places a burden on Defendants' ability to bring such an action. Moreover, "[l]ike the antitrust laws, RICO provides for private enforcement and treble damages … Accordingly, [Hakak's] RICO suit poses a burden on [Defendants'] communication[.]" *Sosa*, 437 F.3d 923, at 933.

***b) The burden on Defendants' communication runs afoul of the Petition Clause***

Next, the Court must determine whether the burden on Defendants' communication runs afoul of the Petition Clause. "In analyzing this question, [the Court] consider[s] whether the [conduct at issue] constitutes either protected petitioning activity or activity which must be protected to afford breathing space to the right of petition guaranteed by the First Amendment." *Id.* The Ninth Circuit has held that "only litigation activities which constitute 'communication[s] to the court' may be fairly described as 'petitions.'" *Id.* (citation omitted; bracketed text in original). However, the Petition Clause may reach conduct that is not itself a communication to preserve the effective exercise of the rights it protects. *Id.* at 933-34.

Here, the Court finds that four of the five instances of Defendants' conduct that Hakak bases her first cause of action on (bank fraud, identity fraud, fraud in connection with access devices, and fraud in connection with computer use) cannot be characterized as either petitioning conduct or conduct incidental to a petition. Although Defendants allege that the conduct forming the basis of Hakak's first

cause of action is "part and parcel to the filing and prosecution of the [Elder Abuse Case]" (MTD at 6), the Court is not entirely convinced. The types of conduct that have been found to be incidental to a petition are generally intertwined with the petition and implicate the Petition Clause's protection. *See Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc.*, 944 F.2d 1525, 1528-29 (9th Cir. 1991), *aff'd* 508 U.S. 49 (1993) (finding that the decision to accept or reject an offer of settlement is conduct incidental to the prosecution of the suit); *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1183-84 (9th Cir. 2005) (finding discovery communications may constitute conduct incidental to a petition). A call to Wells Fargo or the fraudulent use of another's identity to cancel issued checks are not petitions seeking redress from the government and, in this case, do not implicate Defendants' rights under the Petition clause.

However, witness tampering is a different matter. Although witness tampering is not petitioning conduct itself, it is conduct incidental to the prosecution of a suit. *See Kearney*, 590 F.3d 638 at 645-46.

***c) RICO can be read to exclude some of the charged conduct***

Third, the Court must determine whether the statute at issue proscribes the challenged conduct. "[I]f an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative of the statute is 'fairly possible,' we are obliged to construe the statute to avoid such problems." *Sosa*, 437 F.3d at 939 (internal quotation marks and citation omitted).

RICO defines racketeering activity to include witness tampering as defined under 18 U.S.C. section 1512. In a nutshell, section 1512 proscribes using physical force, the threat of physical force, or the knowing intimidation of any person with the intent to influence, delay, or prevent the testimony of said person in an official proceeding. 18 U.S.C. §1512. An official proceeding is defined, in relevant part, as "a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury." 18 U.S.C. § 1515(a)(1)(A).

In her First Amended Complaint, Hakak alleges that Defendants coerced and threatened witnesses in the Elder Abuse Case, a state court proceeding. Therefore, the alleged conduct cannot qualify as racketeering activity that violates section 1512. *Kregzde v. Sarebanha*, No. 8:17-cv-01220-JGB-FFM, 2017 WL 11635443,

at *4 (C.D. Cal. Nov. 29, 2017). Accordingly, Defendants' conduct cannot support a witness tampering predicate act.

It is thus unnecessary for the Court to determine whether the sham exception applies, as the only predicate act that could be barred by *Noerr-Pennington* (witness tampering) is not viable.

**2. Hakak Fails to Plead Several Predicate Acts**

Hakak's first cause of action also suffers from other defects that merit dismissal. As an initial matter, the fifth predicate act (fraud in violation of 18 U.S.C. section 1030) is not a predicate act under RICO. *See* 18 U.S.C. § 1961(1)).

Thus, the Court grants Defendants' Motion to Dismiss as to the first cause of action insofar as the claim is based on violations of 18 U.S.C. sections 1030 and 1512.

Because the Court does not dismiss this claim in its entirety and thus, a federal claim remains, the Court denies Defendant's Motion to Dismiss insofar as it is based on lack of subject matter jurisdiction.

**b. Plaintiff Fails to Plead a Predicate Act for Violation of 18 U.S.C. § 1962(d) (Second Cause of Action)**

Defendants also argue that *Noerr-Pennington* bars Hakak's second cause of action, a RICO conspiracy claim. Hakak bases this claim entirely on Defendants' conspiracy "to engage in fraud by means of false and non-meritorious legal action[.]" FAC ¶ 39.

The Court finds it unnecessary to engage in the *Noerr-Pennington* analysis because Hakak's second cause of action suffers from a more fatal issue – the failure to allege a predicate act. The commencement and maintenance of a lawsuit is not an instance of racketeering activity. *See* 18 U.S.C. § 1961(1).[4]

Thus, the Court grants Defendants' Motion to Dismiss as to Hakak's second cause of action.

---

4 The Court addressed this issue during the hearing, and Hakak's counsel was unable to point to a predicate act under 18 U.S.C. 1961(1).

### 2. Plaintiff Fails to Plead Loss under the CFAA (Count 3)

The CFAA was enacted "to enhance the government's ability to prosecute computer crimes," and "prohibits a number of different computer crimes." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1130-31 (9th Cir. 2009). 18 U.S.C. section 1030(g) provides a private right of action for persons injured by such crimes. 18 U.S.C. § 1030(g); *id.* A private plaintiff must prove that the defendant violated one of the provisions of subsection (c)(4)(A)(i). *See* 18 U.S.C. § 1030(g).

Hakak claims that Defendants' conduct falls within the ambit of subsection (c)(4)(A)(i)(I), which proscribes offenses that result in "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value[.]" 18 U.S.C. § 1030 (c)(4)(A)(i)(I). The term loss is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C.A. § 1030(e)(11).

Defendants argue that Hakak fails to plead that she suffered any "loss" as defined by statute. MTD at 8. Hakak failed to address this argument in her opposition. In her First Amended Complaint, the only economic damage Hakak ties to her CFAA claim is the approximately $60,000 she claims she lost due to the cancelled paychecks. This type of economic loss is not encompassed by the statutory definition of loss because it is not "revenue lost, cost incurred, or other consequential damages incurred ***because of interruption of service***." 18 U.S.C. § 1030(e)(11) (emphasis added); *see also Andrews v. Sirius XM Radio Inc.*, 932 F. 3d 1254, 1262-63 (9th Cir. 2019 ("Accordingly, any theory of loss must conform to the limited parameters of the CFAA's definition. And although the definition does include 'revenue lost,' that refers only to losses that occurred 'because of interruption of service.'")).

Thus, the Court grants Defendants' Motion to Dismiss as to Hakak's Third Cause of Action for Violation of the CFAA.

### 3. Leave to Amend

Due to the sparse nature of the First Amended Complaint, the Court does not find that amendment is futile. Thus, the Court grants Hakak leave to amend her First Amended Complaint to the extent she believes she can cure the identified deficiencies.

### 4. Motion to Strike (anti-SLAPP)

Defendants also move to strike Hakak's state claims under the California anti-SLAPP statute. *See generally* MTS.

#### a. Abuse of Process (Fourth Cause of Action)

Hakak bases her abuse of process claim entirely on the Elder Abuse Case, alleging that, during the proceeding, Defendants obtained a temporary restraining order based on fabrications. FAC ¶¶ 49-54. Defendants argue that the filing and maintenance of the Elder Abuse Case, including obtaining the temporary restraining order, is protected conduct under California Code of Civil Procedure section 425.16. MTS at 6-7.

First, the Court must determine whether Defendants have shown that the challenged activity arose from protected activity. "There is no question that the filing of a civil harassment petition constitutes protected activity." *Kenne v. Stennis*, 230 Cal. App. 4th 953, 965-66 (2014); *see also* Cal. Code. Civ. Proc. § 425.16(e)(1) ("any written or oral statement or writing made before a . . . judicial proceeding" is protected activity.). The Court finds that Defendants have carried their burden and shown that their statements to the court presiding over the Elder Abuse Case are protected conduct.

Thus, the burden shifts to Hakak, who must show a that her claim passes muster under the Rule 12(b)(6) standard. *See Planned Parenthood*, 890 F.3d at 833-34 (where an anti-SLAPP motion challenges the legal sufficiency of a claim, the court determines whether the plaintiff has met the second prong of the anti-SLAPP analysis under the Rule 12(b)(6) standard). Defendants argue that Hakak cannot meet this burden because the mere maintenance of a frivolous lawsuit cannot form a basis for an abuse of process claim under California law. MTS at 10. Defendants also argue that the California litigation privilege also bars Hakak's claim. *Id.* Hakak does not appear to contest Defendants' argument, but instead seems to argue that because the elder abuse proceedings support a RICO violation, she has succeeded in showing the legal sufficiency of her abuse of process claim. Opp'n MTD at 7.

Defendants misunderstand Hakak's claim. Hakak does not base her abuse of process claim on the institution of the allegedly meritless legal proceedings, but on Defendants' obtainment of a temporary restraining order by providing the court

with false information. FAC ¶ 50 ("*[d]uring the course of those wrongful proceedings, Defendants abuse the process by petitioning the court for, and obtaining, temporary restraining orders* against Plaintiff based on fabrications (emphasis added)). Thus, her abuse of process claim is not based on the mere filing or maintenance of a lawsuit but arises out of Defendants seeking a restraining order. However, Defendants are correct that Hakak's claim is barred by California's litigation privilege. The privilege applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objections of the litigation; and (4) that have some connection or logical relation to the action." *Silberberg v. Anderson*, 50 Cal. 3d 205, 212 (1990). Here, Defendants' petitioning conduct in obtaining the temporary restraining order falls within the scope of the litigation privilege and cannot form the basis of Hakak's claim.

Thus, the Court GRANTS Defendants' Motion to Strike as to Hakak's claim for abuse of process.

**b. Malicious Prosecution (Fifth Cause of Action)**

Hakak's fifth cause of action is for malicious prosecution and is based on Defendants' filing and maintenance of the Elder Abuse Claim and subsequent obtainment of a temporary restraining order based on false accusations. FAC ¶¶ 55-61.

As the Court explained above, Defendants have carried their burden of showing that the conduct complained of is protected activity, shifting the burden to Hakak who must show that her claim is legally sufficient. *See supra* Section II(4)(a). As with her abuse of process claim, Hakak argues that her malicious prosecution claim survives the second prong of the anti-SLAPP analysis because it is ground in the same conduct as her RICO claim. Opp'n MTS at 7-8.

Although Hakak's argument fails, her First Amended Complaint passes muster under Rule 12(b)(6) insofar as her malicious prosecution claim is concerned. To state a claim for malicious prosecution, a plaintiff must plead a lawsuit (1) was commenced by or at the direction of defendant and was pursued to a legal termination favorable to the plaintiff; (2) was brought without probable cause; and (3) was initiated with malice. *Nunez v. Pennisi*, 241 Cal. App. 4th 861, 873 (Cal. Ct. App. 2015). In this context, termination is favorable where it "reflects the merits of the action and the plaintiff's innocence of the misconduct alleged in the lawsuit." *Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336, 342 (2004) (internal

quotation marks omitted). A voluntary dismissal may be a favorable termination provided that the dismissal is not on technical grounds or accompanied by a settlement. *See Maleti v. Wicker*, 82 Cal. App. 5th 181, 205 (Cal. Ct. App. 2022); *Robbins v. Blecher*, 52 Cal. App. 4th 886, 894 (Cal. Ct. App. 1997). Here, neither the First Amended Complaint nor the parties' briefings provide any detail concerning why the Elder Abuse Case was dismissed. However, in the absence of any claim that dismissal was based on a technical ground or accompanied by a settlement, Hakak has adequately pled her malicious prosecution claim. *See* FAC ¶¶ 11-12.

Defendants argue that the Court should extend the bar against malicious prosecution claims in the context of civil harassment restraining orders to petitions for elder abuse restraining orders. MTS at 10-11. The Court declines to do so at this stage, especially given Defendants' cursory treatment of the issue.

Thus, the Court DENIES Defendants' Motion to Strike as to Hakak's claim for malicious prosecution.

**c. Intentional Interference with Contractual Relationship, Intentional and/or Negligent Interference with Prospective Economic Advantage, and Unfair Competition (Sixth, Seventh, and Eighth Causes of Action)**

Hakak's remaining causes of action are for interference and violation of California's Unfair Competition Law ("UCL"). Specially, Hakak alleges that:

> Defendants interfered with Plaintiff's existing and potential future contractual relationship with Mr. Igdaloff by filing non-meritorious legal action intended to frustrate that relationship and defaming Plaintiff … Defendants further harmed Plaintiff's potential future contractual relationship with Mr. Igdaloff by wrongfully commandeering him against his wishes and canceling paychecks that he lawfully made out to Plaintiff to compensate her for her labor.

FAC ¶¶ 63-64.[5]

[5] Hakak's Intentional Interference with Prospective Economic Advantage includes similar allegations. *See* FAC ¶¶ 71, 73. Hakak's UCL claim is based on *all* the conduct she complains of her in First Amended Complaint. *See id.* at ¶ 80.

When evaluating a "mixed cause of action"—that, is a cause of action that rests on multiple allegations, some of which constitute protected activity and some of which do not—courts must analyze "each act or set of acts supplying a basis for relief … to determine whether the acts are protected and, if so, whether the claim they give rise to has the requisite degree of merit to survive the motion." *Bonni v. St. Joseph Health Sys.*, 11 Cal. 5th 995, 1010 (2021). Here, Hakak's sixth, seventh, and eighth causes of action are mixed claims because they rest on protected activity (the Elder Abuse Case) and non-protected activity (cancelling Hakak's outstanding paychecks).

For the reasons alleged above, Defendants have carried their burden and shown that these claims are based on protected activity to the extent the claim is based on the Elder Abuse Case. *See supra* Section II(4)(a). However, Defendants have not shown that their conduct in cancelling Hakak's outstanding paychecks is protected conduct.

Thus, the burden shifts to Hakak, who must show a probability of prevailing on claims insofar as they are based on protected activity. In the face of California's litigation privilege, however, Hakak cannot succeed. Thus, the Court grants Defendants' Motion to Strike as to Hakak's intentional interference and UCL claims.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED IN PART**. Plaintiff's First Cause of Action is dismissed insofar as it is based on violations of 18 U.S.C. sections 1030 and 1512. Additionally, Plaintiff's Second and Third Causes of Action are dismissed in their entirety. Plaintiff may attempt to cure the deficiencies in her claims by filing a Second Amended Complaint within 21 days of the issuance of this Order. If Plaintiff do not timely file an amended Complaint, the causes of action will be deemed dismissed with prejudice insofar as they are insufficiently alleged

Defendant's Motion to Strike is also **GRANTED IN PART.** Plaintiff's fourth, sixth, seventh, and eighth causes of action are struck. Defendants are entitled to reasonable attorneys' fees. Defendants must submit a motion for the award of attorneys' fees.

**IT IS SO ORDERED**.